**United States District Court**
**For The Southern District of Florida**

Vilma Martinez,

    Plaintiff,

vs.                                                    Civil Action No. 16-CV-60026

Shellpoint Mortgage Servicing,

    Defendant.

_____/

**First Amended Complaint and Demand for Jury Trial**

Plaintiff, Vilma Martinez, files this First Amended Complaint and Demand for Jury Trial and sues Defendant, Shellpoint Mortgage Servicing ("Shellpoint"), for injunctive and monetary relief, including attorney fees and costs, and respectfully demands judgment against the Defendant on all claims pled against it in this complaint. Plaintiff brings this action under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, its implementing regulation, Regulation X, 12 C.F.R § 1024 ("Regulation X"), the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), and its implementing regulation, Regulation Z, 12 C.F.R. § 1026 ("Regulation Z"), for multiple violations of the RESPA, TILA, Regulation X, and Regulation Z. The ultimate facts supporting Plaintiff's entitlement to the requested relief are articulated in the numbered paragraphs below.

Jurisdiction, Venue, and Parties

1.    This Court has subject matter jurisdiction over Plaintiff's claim under the RESPA and Regulation X pursuant to 12 U.S.C. § 2614 and under the TILA and Regulation Z pursuant to 15 U.S.C. § 1640(a).

2.    Venue is proper in the United States District for the Southern District of Florida under 12 U.S.C. § 2614 because it is the district in which the property involved is located.

3. Plaintiff is Florida resident residing in Miami-Dade County.

4. Defendant, Shellpoint, is a corporation with its principal place of business in Greenville, South Carolina. At all times material to this action, Defendant regularly transacted business in the state of Florida.

Introduction

5. In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), Public Law No. 111-203, 124 Stat. 1376 (2010).

6. Specifically, on July 10, 2013, the CFPB issued mortgage rules under Regulation Z and Regulation X pursuant to its authority under the DFA, which became effective on January 10, 2014.

7. Defendant is a loan "servicer" of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. § 2602(1) and 12 U.S.C. § 2605(i)(2) (the "Loan") and a closed-end consumer credit transaction secured by a consumer's principle dwelling as those terms are defined in TILA, 15 U.S.C. § 1641(f)(3) and § 1602. Defendant receives payments from consumers and is responsible for distributing those payments to the investors who own the consumers' loans and, when the consumers' loans include escrow accounts, to the consumers' taxing authorities or insurance companies. Thus, it is a servicer within the meaning of RESPA. 12 C.F.R. § 1025.2(b). Thus, the Defendant is subject to the servicing requirements provided for in the RESPA and Regulation X.

8. RESPA and Regulation X are applicable to all "federally related mortgage loans", which include any loans secured by a first or subordinate lien on residential real property upon

which a one-to-four family structure is located and which is made in whole or in part by any lender that is either regulated by or whose deposits or accounts are insured by an agency of the Federal Government. *See* 12 C.F.R. § 1024.2. Accordingly, Plaintiff's Mortgage is a "federally related mortgage loan" as defined in Regulation X. *Id.*

9.  The sections of Regulation X which Plaintiff alleges have been violated by the Defendant were promulgated pursuant to § 6 of RESPA and are thus subject to RESPA's private right of action. *See* 78 Fed. Reg. at 10790 (describing the effect of promulgating a regulation pursuant to Section 6 of RESPA with respect to creating a private right of action).

10. Plaintiff is asserting a claim for relief against Defendant for breaches of the specific rules under Regulation X and Regulation Z as set forth below.

11. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) and under TILA pursuant to 15 U.S.C. § 1640(a) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, attorneys' fees and costs.

Factual Allegations

12. Plaintiff is the fee simple owner of the real property located at 14501 NW 2nd Avenue, Miami, FL 33168 (the "Property")

13. On January 27, 2006, Plaintiff executed a promissory note and mortgage in favor of Countrywide Home Loans, Inc. for the purchase of the Property.

14. On October 9, 2015, Plaintiff sent to Defendant a Third-Party Agent Authorization authorizing Defendant to obtain, share, release, and or discuss with its third party designated agent, New Regs Research Group, LLC ("New Regs"), any and all details regarding the loan, including specifically the submitting of any requests for information and notices of error. A copy of the Designated Third-Party Authorization is attached as Exhibit "A"

15. On October 12, 2015, Plaintiff submitted three separate requests for information to Defendant and requested that the Defendant provide certain information relating to the Loan, including the following:

a. The name, address, telephone number, website, email address and or any other information which identifies the alleged Owner(s) and Assignee(s) for the Loan;

b. Copies of any and all notices of any ownership transfer of the Loan to any other creditor, investor, or owner;

c. A list of all loss mitigation options the investor or assignee participates in;

d. A statement of any premiums and or fees assessed to the Loan account for any forced-placed insurance;

e. A record of all property taxes that have been paid by the servicer;

f. The alleged date of default for the Loan;

g. An accurate and current statement of the total outstanding balance and/or the pay-off amount required to pay the Loan in full;

h. A copy of the last periodic statement mailed in connection with the Loan;

i. A list of any credit bureaus which have been notified in connection with the Loan along with any information associated with these reporting events.

A copy of each October 12th Request for Information is attached as Composite Exhibit "B".

16. On October 20, 2015, after Defendant's failure to acknowledge receipt of the October 12th requests for information, Plaintiff requested that its third-party agent, New Regs, submit another request for information again requesting certain information in connection with its Loan. A copy of the Defendant's October 20th letter is attached as Exhibit "C".

17. On October 29, 2015, having yet to receive a response from the Defendant regarding any of Plaintiff's submitted requests, Plaintiff submitted to the Defendant a notice of error alleging that Defendant and its foreclosure counsel had taken certain actions in violation of 12 C.F.R. 1024.41 and engaged in dual tracking. A copy of the Defendant's October 29th notice of error letter is attached as Exhibit "D".

18. On November 6, 2015, Plaintiff received a response letter from Defendant, dated November 3, 2015, where it states that it is responding to Plaintiff's "…correspondence dated October 9, 2015, regarding…" the Loan. A copy of the Defendant's November 3rd response letter is attached as Exhibit "E".

19. On November 17, 2015, Defendant provided the Plaintiff with payoff figures on the Loan. A copy of the November 17th letter is attached as Exhibit "F".

20. On November 25, 2015, having yet to receive an acknowledgement or response from Defendant with regard to her dual tracking notice of error, Plaintiff was forced to retain legal counsel and file a Motion to Stay and/or Cancel Sale Date in Miami-Dade County Circuit Court Case No. 2008-CA-58648 (the "Foreclosure Action"). A copy of the Motion to Stay and/or Cancel Sale Date is attached as Exhibit "G".

21. On November 30, 2015, Plaintiff sent to Defendant a notice of error and request for information alleging that the Defendant had yet to provide the owner contact information for Plaintiff's Loan. A copy of the Plaintiff's November 30th notice of error and request for information letter is attached as Exhibit "H".

22. On November 30, 2015, after failing to cancel the sale, Plaintiff's Property was sold to a third party purchaser as the high bidder in the judicial foreclosure sale.

### Count I – Failure to Acknowledge Request for Information
### Violation of Regulation X, Section 12 C.F.R. § 1024.36(c)

23.     Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for damages.

24.     Section 1024.36(c) of Regulation X provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request." 12 C.F.R. § 1024.36.

25.     Defendant failed to provide to the Plaintiff a written response acknowledging either of the three separate and individual requests for information sent on October 12, 2015.

26.     As a result, Defendant incurred actual damages in the form of (1) costs to prepare each request for information and subsequent notices of error; (2) costs incurred in connection with the photocopying and mailing of the requests for information and notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

27.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

## Count II – Failure to Acknowledge Request for Information
### Violation of Regulation X, Section 12 C.F.R. § 1024.36(c)

28.     Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for damages.

29. Section 1024.36(c) of Regulation X provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request." 12 C.F.R. § 1024.36.

30. Defendant failed to provide to the Plaintiff a written response acknowledging the request for information sent on October 20, 2015.

31. As a result, Defendant incurred actual damages in the form of (1) costs to prepare each request for information and subsequent notices of error; (2) costs incurred in connection with the photocopying and mailing of the requests for information and notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

32. Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

### Count III – Failure to Timely Provide Loan Owner Information
### Violation of Regulation X, Section 12 C.F.R. § 1024.36(d)(2)(i)

33. Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for damages.

34. Section 10.24.36(d)(2) provides that a servicer must provide the borrower with the requested information "[n]ot later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other

relevant contact information for, the owner or assignee of a mortgage loan…" 12 C.F.R. § 1024.36(d)(2).

35. Plaintiff's October 12th request for information, which Defendant received on October 15, 2015, asked that the Defendant provide "[t]he name, address, telephone number, website, email address and or any other information which identifies the alleged Owner(s) and Assignee(s) for the above referenced mortgage loan (Loan Owner)."

36. Defendant sent a response to Plaintiff's requests for information with a letter dated November 3, 2015 where it attempted to answer Plaintiff's request as to the owner of the Loan by attaching a corrective assignment of mortgage.

37. Defendant's November 3, 2015 response was sent to Plaintiff more than 10 days after Defendant received Plaintiff's request for information and is therefore untimely under 12 C.F.R. § 1024.36(d)(2).

38. As a result, Defendant incurred actual damages in the form of (1) costs to prepare each request for information and subsequent notices of error; (2) costs incurred in connection with the photocopying and mailing of the requests for information and notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

39. Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

**Count IV – Failure to Provide Loan Owner Information
Violation of Regulation X, Section 12 C.F.R. § 1024.36(d)(1)(i)**

40.  Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for damages.

41.  Regulation X, Section 12. C.F.R. § 1024.36(d)(1)(i) provides that a "…a servicer must respond to an information request by either: (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer …." 12 C.F.R. § 1024.36(d)(1)(i).

42.  Plaintiff's October 12th request for information, which Defendant received on October 15, 2015, asked that the Defendant provide "[t]he name, address, telephone number, website, email address and or any other information which identifies the alleged Owner(s) and Assignee(s) for the above referenced mortgage loan (Loan Owner)."

43.  Defendant sent a response to Plaintiff's requests for information asking for the identity and contact information of the owner of Plaintiff's Loan with a letter dated November 3, 2015 where it made no mention of the owner of the Loan other than to attach a copy of a corrective assignment of Plaintiff's mortgage.

44.  Well settled Florida law has consistently held that a mortgage is but an incident to a debt, the payment which it secures, and its ownership follows the assignment of the debt. *See WM Specialty Mortgage, LLC v. Salomon,* 874 So. 2d 680, 682 (Fla. 4th DCA 2004)

45.  Therefore, and to the extent that the attaching of a legal document to a response letter qualifies as a response under § 1024.36(d)(1)(i), an assignment of mortgage, which is merely

an instrument incident to the underlying debt, is not a sufficient response to the Plaintiff's request for the owner information of her Loan.

46.     As a result, Defendant incurred actual damages in the form of (1) costs to prepare each request for information and subsequent notices of error; (2) costs incurred in connection with the photocopying and mailing of the requests for information and notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

47.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

## Count V – Failure to Acknowledge Notice of Error
## Violation of Regulation X, Section 12 C.F.R. § 1024.35(d)

48.     Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for damages.

49.     Under § 1024.35(b)(11), the term "error" is defined as including "[m]oving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of s 1024.41(g) or (j)." 12 C.F.R. § 1024.35(b)(11).

50.     Regulation X requires that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error. 12 C.F.R. § 1024.35(d).

51. On October 29, 2015, Plaintiff sent to Defendant a notice of error with allegations that the Defendant and its foreclosure attorneys were engaging in dual tracking in violation of Regulation X, § 1024.41(g).

52. Defendant has yet to acknowledge receipt of Plaintiff's October 29, 2015 notice of error and is therefore in violation of § 1024.35(d).

53. As a result, Defendant incurred actual damages in the form of (1) costs to prepare each notice of error; (2) costs incurred in connection with the photocopying and mailing of the notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

54. Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

### Count VI – Failure to Respond to Notice of Error
### Violation of Regulation X, Section 12 C.F.R. § 1024.35(e)(3)(b)

55. Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for damages.

56. Section 1024.35(e) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction …" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred…." 12 C.F.R. § 1024.35(e)(1)(B).

57. The section requires that the servicer respond to a notice asserting errors under paragraphs (b)(9) and (1) of section 1024.35 "[p]rior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error…." 12 C.F.R. § 1024.35(e)(3)(B).

58. The Defendant has failed to either correct the error or provide a response stating that it determined that no error occurred before the Plaintiff's foreclosure sale and therefore the Defendant is in violation of Regulation X. 12 C.F.R. § 1024.35(e).

59. As a result, Defendant incurred actual damages in the form of (1) costs to prepare each notice of error; (2) costs incurred in connection with the photocopying and mailing of the notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

60. In addition, due to Defendant's violation of Regulation X, Plaintiff was forced to obtain counsel in order to file and attend a hearing on a motion to cancel foreclosure sale and therefore incurred additional damages in the form of attorneys' fees and costs.

61. Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

### Count VII – Failure to Notify Plaintiff of Right to Appeal
### Violation of Regulation X, Section 12 C.F.R. § 1024.41(d)(2)

62. Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for damages.

63. Section 1024.41(d)(2) requires that a servicer provide a borrower a notification "…that the borrower may appeal the servicer's determination for any such trial or permanent loan modification option, the deadline for the borrower to make an appeal, and any requirements for making an appeal." 12 C.F.R. § 1024.41(d)(2).

64. During the pendency of her foreclosure, Plaintiff submitted to Defendant a complete loss mitigation application.

65. On or about November 5, 2011, Defendant sent a purported denial letter in connection with Plaintiff's loss mitigation application but failed to notify Plaintiff of her right to appeal the Defendant's denial.

66. Therefore, the Defendant's purported denial letter is in violation of Regulation X section 1024.41 for its failure to notify the borrower of her right to appeal the denial.

67. Accordingly, Plaintiff has incurred actual damages including but not limited to the costs of preparing notices of error as to dual tracking, requests for information as to the status of her application, and the eventual sale of her Property which was a proximate cause of the denial of her loss mitigation application. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f).

### Count VIII – Failure to Provide Timely Payoff Statement
### Violation of Regulation Z, Section 12 C.F.R. § 1026.36(c)(3), TILA, 15 U.S.C. 1639(g)

68. Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for damages.

69. Regulation Z, Section 1026.36(c)(3) states that a servicer "… must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer." 12 C.F.R. § 1026.36(c)(3).

70. Plaintiff sent Defendant a written request for a payoff on October 12, 2015.

71. Over one month later, on November 17, 2015, the Defendant provided the Plaintiff with the requested payoff information.

72. Defendant failed to respond within the timeline set forth by § 1026.36(c)(3) and is therefore in violation of Regulation Z and TILA. *See also* 15 U.S.C. § 1639(g) ("[a] creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.").

73. Accordingly, the Plaintiff is entitled to both actual and statutory damages. Plaintiff has incurred actual damages in the form (1) costs to prepare the payoff request and subsequent notice of error for Defendant's failure to timely provide a payoff statement; (2) costs incurred in connection with the photocopying and mailing of the requests for payoff figures and notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation Z and TILA. Plaintiff is additionally entitled to statutory damages in the amount of $4,000 as a result of Defendant's violation in connection with a "credit transaction not under an open end credit plan that is secured by real property or dwelling…." 15 U.S.C. § 1640(a)(1)-(2).

**Count IX – Failure to Periodic Monthly Statements**
**Violation of Regulation Z, Section 12 C.F.R. § 1026.41**

74. Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for damages.

75. Regulation Z requires that a servicer "shall provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section." 12 C.F.R. § 1026.41(a)(2).

76. Plaintiff has not received a single periodic monthly statement from Defendant for a significant period of time and therefore Defendant is in violation of Regulation Z.

77. Accordingly, the Plaintiff is entitled to both actual and statutory damages. Plaintiff has incurred actual damages in the form (1) costs to prepare a notice of error for Defendant's failure to provide periodic monthly statements; (2) costs incurred in connection with the photocopying and mailing of the notice of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation Z and TILA. Plaintiff is additionally entitled to statutory damages in the amount of $4,000 as a result of Defendant's violation in connection with a "credit transaction not under an open end credit plan that is secured by real property or dwelling…." 15 U.S.C. § 1640(a)(1)-(2).

## Count X – Injunctive Relief

78. Plaintiff incorporates the allegations in paragraphs 1-22 above into this count for injunctive relief.

79. Federal district courts have inherent power to issue equitable relief. In addition to this inherent authority, declaratory relief is available under the Declaratory Judgment Act whenever there is a case of actual controversy. 28 U.S.C. §§ 2201, 2202. *See also Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) (holding that "[a]bsent the clearest command to the contrary

from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction.")

80. The jurisdictional provision in RESPA, § 2614, provides that an "action" pursuant to the provision of section 2506, 2507, or 2608 may be brought in a federal district court or in any other court of competent jurisdiction. 12 U.S.C. § 2614.

81. Law and equity have merged to create only one form of action, a civil action. *See* Fed. R. Civ. P. 2.

82. By using the term "action" in section 2614, without any restrictions on its ordinary meaning, Congress intended the federal courts to have jurisdiction in a RESPA action over claims for both legal and equitable relief.

83. Accordingly, Plaintiff respectfully requests that the Court award her injunctive relief in the form of a stay on the Foreclosure Action to allow for Plaintiff and Defendant to properly conclude their loss mitigation efforts and in order to avoid any further damages.

## Prayer for Relief

Wherefore, Plaintiff demands final judgment against Shellpoint providing for all of the following:

a. awarding actual damages that have been and may be proximately caused by Shellpoint's violation of the RESPA, Regulation X, the TILA, Regulation Z;

b. statutory damages under RESPA for Shellpoint's pattern and practice of non-compliance and under TILA for the Defendant's violation in connection with a credit transaction secured by the Plaintiff's dwelling;

c. prevailing party attorneys' fees and costs under 12 U.S.C. § 2605(f) and 15 U.S.C. § 1640(a);

d. injunctive relief staying the Foreclosure Action;

   e. awarding any further relief available under the law.

## Jury Demand

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

_____
January 20, 2016
Miami, FL

            Respectfully submitted,

            Jason Bravo
            Florida Bar No. 85743
            jbravo@thebravolawfirm.com
            The Bravo Law Firm, PLLC
            4201 SW 85th Avenue
            Miami, FL 33155
            Tel: 305.335.0709
            Attorney for Plaintiff

            */s/ Jason Bravo*
            Jason Bravo
            Florida Bar No. 85743